WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rachel Gilchrist, et al., | No. CV-25-03389-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Arizona Department of Child Safety, et al., | |
| Defendants. | |

On March 13, 2026, the Court, having previously granted Plaintiffs' application to proceed in forma pauperis (Doc. 7), screened the first amended complaint ("FAC") (Doc. 10) pursuant to 28 U.S.C. § 1915(e)(2) and dismissed it with limited leave to amend. (Doc. 11.)

The Court summarized the FAC as follows:

The FAC does not set forth a coherent narrative of the relevant events and actions, but this much is clear: two children (designated in the FAC as "Child A" and "Child B") were allegedly removed from the custody of pro se Plaintiffs Rachel Gilchrist (the children's biological mother) and John Gilchrist (biological father of one of the two children) by Defendant Arizona Department of Child Safety ("DCS"). Attached to the FAC are, *inter alia*, various state court records from Maricopa County Superior Court dependency case no. JD529818, dated April 2016, including two copies of a document entitled "Dependency Mediation Results and Order," which indicates that Plaintiffs agreed to the placement of the children with Joshua Cool, who is the biological father of one of the children and a "[n]on-licensed relative" of the other child. Plaintiffs assert that the dependency was "void ab initio," that "[a]ll actions taken under JD528918 were ultra vires and unconstitutional," and that Plaintiffs did not learn that the dependency "was never legally initiated" until 2025, when "concealed records, misidentified court documents and familial disclosures revealed" "key defects," including lack of "personal service of the March 11 [2016] petition," certain alleged procedural flaws, and various complaints about the children's care (*e.g.*,

vaccination without Plaintiffs' consent, visitation restrictions, concerns with placement).

(Doc. 11 at 2-3.)

Specifically, Defendants DCS, Jenna Oden Garcia, and Sarah Priestly were dismissed without leave to amend. As for the remaining Defendants (former DCS Director Greg McKay, current DCS Director Kathryn Ptak, Brandi Curley, the assigned DCS caseworker in 2016, and "Investigator 1" and "Investigator 2," who "were present for the warrantless removal [of the children] on March 13, 2016,"), the Court noted that the FAC was "a lengthy hodgepodge of allegations" and that there was "no way to determine what conduct, by which defendants, supports the various causes of action," contravening Rule 8 of the Federal Rules of Civil Procedure. (*Id.* at 4-5.)

On March 26, 2026, Plaintiffs filed the Second Amended Complaint ("SAC"). (Doc. 12.) The SAC alleges as follows. "On March 11, 2016, a dependency petition was filed with the Arizona Department of Child Safety regarding Plaintiffs and their two minor children, Child A and Child B." (*Id.* ¶ 11.) On March 13, 2016, Investigators 1 and 2 arrived at the home of Child A's biological father ("Cool")[1] and instructed "a relative of Child A" to "leave with Child A in her vehicle." (*Id.* ¶¶ 12-13.) Immediately afterward, Investigators 1 and 2 "directed Plaintiff Rachel Gilchrist to contact Plaintiff John Gilchrist and inform him that they needed to conduct a welfare check on Child B." (*Id.* ¶ 15.) The Investigators "followed Plaintiff Rachel Gilchrist to her grandparents' home in Mesa, Arizona," and "John Gilchrist arrived shortly thereafter with Child B." (*Id.* ¶ 16.) Child B was not allowed to return home with Plaintiffs, and the Investigators required Plaintiffs to take drug tests that evening. (*Id.* ¶¶ 17-18.) Investigators 1 and 2 "did not obtain a warrant or court order and did not describe any exigent circumstances" for the removal of Child A or Child B from Plaintiffs' custody. (*Id.* ¶¶ 14, 19.) On April 21, 2016, a mediation took place, and DCS caseworker Curley "imposed additional services on Plaintiffs. (*Id.* ¶¶

---

[1]    As noted in the previous screening order, Child A's biological father is Joshua Cool. (Doc. 10 at 46, 52-53.)

- 2 -

20-21.)  On July 25, 2016, the dependency petition was dismissed as to Child A, custody of Child A was transferred to Cool, and Plaintiffs were denied further visitation for Child A.  (*Id.* ¶¶ 24-25.)  Child B "remained in dependency proceedings without adjudication for nearly fourteen additional months."  (*Id.* ¶ 28.)  Plaintiffs have not had contact with Child A since July 25, 2016 and do not know Child A's whereabouts.  (*Id.* ¶¶ 30-31.)  Plaintiffs "did not discover several critical defects in the dependency proceedings until October 14, 2025."  (*Id.* ¶ 32.)

Counts One and Two of the SAC are Fourth Amendment claims for unreasonable seizure of Child A and Child B against Investigators 1 and 2.  *See Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1291 (9th Cir. 2007) ("[W]arrantless removal of children is permissible only in cases of exigency.").  The first page of the SAC identifies the claims as brought under 42 U.S.C. § 1983, and even without this mention, the Court would construe the claims as § 1983 claims.  *See, e.g.*, *Davis v. Burbank Police Dep't*, 2025 WL 3131348, *1 n.3 (C.D. Cal. 2025) ("Although the Initial Complaint does not mention 42 U.S.C. § 1983, the Court liberally construed Plaintiff's Fourth Amendment claims for monetary damages as § 1983 claims.")

"Section 1983 does not contain its own statute of limitations.  Without a federal limitations period, the federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims in the forum state.  In Arizona, the courts apply a two-year statute of limitations to § 1983 claims.  But in borrowing a state statute of limitations for a federal cause of action, . . . federal, not state, law determines when a civil rights claim accrues.  Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (cleaned up).

Here, the seizures took place in March 2016, and this action was initiated nine and a half years later.  The statute of limitations on any unreasonable-seizure claim began to run in March 2016, when the children were removed from Plaintiffs' care.  *Wood v. Kern Cnty. Child Protective Servs.*, 2014 WL 1664885, *5 (E.D. Cal. 2014) ("[T]he date the

- 3 -

statute of limitations began to run was not when Plaintiffs finally learned of the requirements for the lawful removal of the children from their care, it was when they knew the critical facts of the injury . . . . Here, when the children were removed from the home, Plaintiffs were aware of the injury—the . . . wrongful removal of the children—and who inflicted the injury—those who entered and removed the children.") (cleaned up); *Moore v. Cnty. of Sacramento, Dep't of Child*, 2020 WL 2489736, *8 (E.D. Cal. 2020) ("Plaintiffs had ample knowledge of the alleged wrong in 2014, when the grandchildren were removed from their home, and failed to bring their claims in the two years that followed."); *Scoins v. Goddard*, 2007 WL 2807755, *5 (D. Ariz. 2007) ("Scoins realized that she had been injured by these defendants as soon as she lost custody of her children.").

As such, the claims against Investigators 1 and 2 in Counts One and Two are barred by the statute of limitations.

The remaining claims in Counts Three, Four, and Five are Fourteenth Amendment claims, all brought against Defendant Curley,[2] which again must be construed as § 1983 claims. The same statute of limitations analysis applies. Moreover, the only allegations attributable to Curley are that she imposed "services" (*e.g.*, drug testing requirements) on Plaintiffs, "separat[ed] Child A and B from Plaintiffs and restrict[ed] contact without adjudication or justification," did not provide Plaintiffs with "Form 1" before or during the April 21, 2016 mediation, "dismissed" Child A from the dependency action, and "required Plaintiffs and their children to undergo medical procedures . . . without adjudication or emergency necessity." These vague allegations, taken as true, are not enough to establish liability or timeliness.[3]

[2]    Although the caption identifies Greg McKay and Kathryn Ptak as additional defendants (Doc. 12 at 1), the FAC does not assert any claims against them. Moreover, to the extent the FAC alleges that McKay "was responsible for policies and practices governing dependency investigations and removals within the Arizona Department of Child Safety" and "was responsible for oversight of these practices and failed to take corrective action" (*id.* ¶¶ 33, 35), such allegations would be insufficient to support *Monell* liability even if the FAC had asserted such a claim.

[3]    Furthermore, state court records submitted by Plaintiffs establish that during the April 21, 2016 mediation, Plaintiffs agreed to placement of both children with Child A's biological father (Cool), Plaintiffs agreed to a visitation plain, and Plaintiffs agreed to the specified services. (Doc. 10 at 45-48.)

Because it is clear that amendment would be futile, the dismissal is without leave to amend. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed pro se plaintiff regarding deficiencies in prior order dismissing claim with leave to amend); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

Accordingly,

**IT IS ORDERED** that the SAC is dismissed without leave to amend. The Clerk of Court shall enter judgment and terminate this action.

Dated this 30th day of June, 2026.

_____
Dominic W. Lanza
United States District Judge